UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KORPAK, LTD.,<br><br>                    Plaintiff,<br><br>          -v.-<br><br>WILLIAMS LEA INC.,<br><br>                    Defendant. | 20 Civ. 6880 (KPF)<br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Plaintiff Korpak, Ltd. brings this diversity action for breach of contract and account stated against Defendant Williams Lea Inc., alleging that Defendant failed to pay for certain printing goods and services totaling $787,690.11.  Defendant counterclaims for breach of contract and declaratory judgment, alleging that Plaintiff failed to procure commercial crime insurance and to maintain certain information security measures as required under the parties' contract.  Plaintiff has moved to dismiss Defendant's counterclaim for breach of contract on the basis that Defendant has failed to plausibly allege performance and damages.  For the reasons that follow, the Court denies in full Plaintiff's motion.

## BACKGROUND[1]

### A. Factual Background

#### 1. The Parties

Plaintiff is a foreign company incorporated and existing under the laws of South Korea that ships and distributes goods and services in the State of New

---

[1] This Opinion draws its facts from the Amended Complaint (Dkt. #16 ("Am. Compl.")), and Defendant's Answer and Counterclaims (Dkt. #18 ("Countercl.")).  For the purposes of resolving this motion, the Court considers all well-pleaded factual allegations in the

York, with its principal place of business in South Korea. (Countercl. ¶ 30). Defendant is a Delaware corporation, registered as a foreign business corporation with the State of New York, with its principal place of business in New York. (*Id.* at ¶ 29).

### 2.     The Agreement

On March 25, 2017, the parties entered into an agreement (the "Agreement"), pursuant to which Defendant served as a middleman in the acquisition of certain printing goods and services from Plaintiff (the "Goods"), which were, in turn, sold to nonparty Estée Lauder Companies. (Countercl. ¶ 32). Defendant's breach of contract counterclaim centers on Plaintiff's alleged breach of two provisions of the Agreement. Section 15.1 of the Agreement required Plaintiff to procure commercial crime insurance with a minimum limit per event of $5,000,000 dollars. (*Id.* at ¶ 34; *see also* Agreement § 15.1). Section 18.2, Schedule 2 of the Agreement required Plaintiff to maintain certain information security measures, including

---

Answer and Counterclaims to be true, drawing all reasonable inferences in the non-movant's favor. *See Judd Burstein, P.C.* v. *Long*, 797 F. App'x 585, 587 (2d Cir. 2019) (summary order) (explaining that on a motion to dismiss, a court "must determine whether [a counterclaimant's] well-pleaded allegations, accepted as true, state a claim to relief that is plausible on its face" (citing *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). The Court draws additional facts from the sole exhibit appended to the Declaration of Meghan Laganza in support of Plaintiff's motion to dismiss the counterclaim; that exhibit is the "Terms and Conditions for the Purchase of Printed Goods and Printing Services Agreement," dated March 25, 2017 (Dkt. #35-1 (the "Agreement")), which is both incorporated by reference in, and integral to, the Counterclaims. *See Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016) (delineating the materials a court may consider on a motion to dismiss, and explaining that a document is integral to a pleading where the pleading "relies heavily upon its terms and effect").

For ease of reference, the Court refers to Plaintiff's memorandum of law in support of its motion to dismiss as "Pl. Br." (Dkt. #36); Defendant's memorandum of law in opposition to Plaintiff's motion to dismiss as "Def. Opp." (Dkt. #37); and Plaintiff's reply memorandum as "Pl. Reply" (Dkt. #38).

compliance with the industry standards "reasonably expected of a diligent vendor providing services to a global investment bank." (Countercl. ¶ 35; *see also* Agreement § 18.2; *id.* at 15-16 (Schedule 2 of the Agreement)).[2] Defendant alleges that Plaintiff neither procured commercial crime insurance nor satisfied its obligation to maintain the requisite information security measures. (*Id.* at ¶¶ 36-37).

Additionally, Section 22.1 of the Agreement provided that Plaintiff would indemnify Defendant for any claims arising from Plaintiff's breach of any term or condition of the Agreement. (Countercl. ¶ 38; *see also* Agreement § 22.1). This indemnification clause expressly included payment of "reasonable attorneys' fees" related to a breach of the Agreement, and specifically identified a breach of Section 18 of the Agreement as an event triggering Plaintiff's duty to indemnify. (Countercl. ¶ 38; *see also* Agreement § 22.1).

Pursuant to the Agreement, Plaintiff supplied the Goods to Defendant. (Countercl. ¶ 39). Subsequently, on July 3, 2019, Plaintiff sent invoices to Defendant totaling $787,690.11 (the "Invoices"). (Am. Compl. ¶ 12). Defendant transmitted the full amount of the invoices to Plaintiff. (Countercl. ¶ 40). Defendant alleges that through no fault of its own, the payment for the Invoices was diverted when a cybercriminal interjected itself into an email chain

---

[2]  Although Defendant's breach of contract counterclaim is limited to Plaintiff's purported breaches of Sections 15.1 and 18.2 of the Agreement, Defendant also points to Section 6 of the addendum to the Agreement, which provision similarly required Plaintiff to maintain "[c]ommercial crime insurance with a minimum limit of $5,000,000 per event." (Countercl. ¶ 42; Agreement 19-20). The Court notes that Defendant sources this obligation to Section 6(g) of the addendum, but it is in fact Section 6(f). (Agreement 20).

between the parties and redirected the payment to a fraudulent account. (*Id.* at ¶ 41). Defendant alleges that the losses it suffered as a result of this criminal activity are the direct result of Plaintiff's breaches of several provisions of the Agreement, including Section 15.1 (requiring Plaintiff to procure "commercial crime insurance") and Section 18.2, Schedule 2 (failing to maintain certain information security measures). (*Id.* at ¶ 42).

**B.    Procedural Background**

Plaintiff filed the Complaint in this case on August 25, 2020, asserting claims against Defendant for (i) breach of contract, (ii) account stated, (iii) quantum meruit, (iv) unjust enrichment, and (v) breach of the implied covenant of good faith and fair dealing. (Dkt. #1). On October 13, 2020, Defendant requested leave to file a motion to dismiss Plaintiff's claims for quantum meruit, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. (Dkt. #7). The following day, the Court granted Defendant's request and set a briefing schedule for Defendant's motion to dismiss (Dkt. #10), which motion Defendant filed on November 23, 2020 (Dkt. #12-14). On December 14, 2020, Plaintiff filed the Amended Complaint, which omitted the three claims Defendant sought to dismiss, leaving only claims for breach of contract and account stated. (Dkt. #16). In light of the amended pleading, on December 15, 2020, the Court denied Defendant's motion to dismiss as moot. (Dkt. #17).

On January 4, 2021, Defendant filed its Answer and Counterclaims, in which it brought counterclaims against Plaintiff for breach of contract and

4

declaratory judgment. (Dkt. #18). On January 21, 2021, Plaintiff requested leave to file a motion to dismiss Defendant's counterclaim for breach of contract. (Dkt. #22). The Court held a pre-motion conference on February 4, 2021, after which it stayed Plaintiff's obligation to respond to Defendant's Counterclaims and referred the case to Magistrate Judge Robert W. Lehrburger for a settlement conference. (*See* Minute Entry for February 4, 2021; Dkt. #25). The parties attended a settlement conference before Judge Lehrburger on March 15, 2021, but were unable to resolve the matter. (Dkt. #29). The Court therefore directed the parties to propose a briefing schedule on Plaintiff's contemplated motion for partial dismissal of Defendant's Counterclaims, which they did in a joint letter submitted on March 24, 2021. (Dkt. #29, 30).

Plaintiff filed its motion to dismiss on April 30, 2021. (Dkt. #34-36). Defendant filed its opposition brief on May 28, 2021. (Dkt. #37). Plaintiff filed its reply on June 11, 2021. (Dkt. #38). Accordingly, Plaintiff's motion is fully briefed and ripe for decision.

## DISCUSSION

### A.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

A court evaluates a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) using the same standard as a motion to dismiss a complaint. *Phoenix Cos., Inc.* v. *Concentrix Ins. Admin. Sols. Corp.*, — F. Supp. 3d —, No. 20 Civ. 1738 (KPF), 2021 WL 3604663, at *8 (S.D.N.Y. Aug. 12, 2021) (citing *A.V.E.L.A., Inc.* v. *Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015)). When evaluating a motion to dismiss counterclaims

for failure to state a claim, a court "must accept all well-pleaded facts as true and construe the answer and counterclaims in the light most favorable to the nonmoving party." *Id.* at *8 (quoting *Meridien Int'l Bank Ltd.* v. *Gov't of the Republic of Liberia*, 23 F. Supp. 2d 439, 445 (S.D.N.Y. 1998)); *see also Judd Burstein, P.C.* v. *Long*, 797 F. App'x 585, 587 (2d Cir. 2019) (summary order).

A counter-defendant prevails on a motion to dismiss if the claim against it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *SmartStream Techs., Inc.* v. *Chambadal*, No. 17 Civ. 2459 (VSB), 2018 WL 1870488, at *3 (S.D.N.Y. Apr. 16, 2018) (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). While a court should accept the counterclaimant's allegations as true, it need not follow that course for any of the counterclaimant's legal conclusions. *See id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Nor must a court "accept as truth conflicting pleadings ... that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001). In sum, "[a] motion to dismiss should be granted 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Nielsen* v. *AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).

On a motion to dismiss, the Court may consider any statements or documents incorporated by reference in the complaint, documents that are

"integral" to the complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken. *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). A document is integral to the complaint "where the complaint relies heavily upon its terms and effect." *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers*, 282 F.3d at 153). "In most instances" where courts deem a document "integral to the complaint," "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls." *Id.* (quoting *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)). As the Court discusses below, Plaintiff seeks to have this Court consider certain materials extraneous to Defendant's counterclaim that fall into none of these categories. (*See* Pl. Br. 3-5).

### B. The Court Denies Plaintiff's Motion to Dismiss Defendant's Counterclaim for Breach of Contract

To review, Plaintiff moves to dismiss Defendant's counterclaim for breach of contract, arguing that Defendant has failed to allege damages and adequate performance. For the reasons discussed below, the Court denies Plaintiff's motion.

To state a claim for breach of contract under New York law, a counterclaim plaintiff need only allege "[i] the existence of an agreement, [ii] adequate performance of the contract by the [counterclaim] plaintiff, [iii] breach of contract by the [counterclaim] defendant, and [iv] damages." *Harsco Corp.* v. *Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *accord Frye* v. *Lagerstrom*, No. 20-3134, 2021 WL 4022695, at *4 (2d Cir. Sept. 3, 2021)

(summary order).³ In its Counterclaims, Defendant alleges that (i) there was a "valid and binding agreement" between Plaintiff and Defendant (Countercl. ¶ 44); (ii) Defendant at all times performed its obligations under the Agreement (*id.* at ¶ 45); (iii) Plaintiff breached the Agreement by failing both to procure commercial crime insurance, as required by Section 15.1 of the Agreement, and to maintain information security measures, as required by Section 18.2, Schedule 2 of the Agreement (*id.* at ¶¶ 46-47); and (iv) Plaintiff's breaches resulted in the diversion of Defendant's payment for the Invoices to a fraudulent account, causing Defendant to suffer monetary damages in an amount to be proven at trial (*id.* at ¶¶ 48-49). For purposes of this motion, Plaintiff does not dispute that Defendant has sufficiently alleged the existence of the Agreement and Plaintiff's breach of the Agreement. Instead, Plaintiff's arguments focus on Defendant's purported failure to allege (i) damages or (ii) adequate performance of the Agreement. (Pl. Br. 10). The Court will address each of these elements in turn.

### 1. The Counterclaim Plausibly Alleges Damages

Plaintiff contends that Defendant has failed to allege that it suffered damages as a result of Plaintiff's alleged breach of the Agreement. (Pl. Br. 11). Plaintiff proffers several reasons why this is the case, namely that (i) Defendant

---

3   The parties do not dispute that New York law applies in this case and both apply New York law in their briefing on this motion. (*See* Pl. Br. 9; Def. Opp. 6-7). Accordingly, the Court applies New York law to Defendant's breach of contract counterclaim. *See Krumme* v. *Westpoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (explaining that the parties' "implied consent ... is sufficient to establish choice of law"); *see also Valentini* v. *Grp. Health Inc.*, No. 20 Civ. 9526 (JPC), 2021 WL 2444649, at *6 (S.D.N.Y. June 15, 2021) ("The parties do not dispute that New York law applies in this case, and the Court accordingly applies that law.").

has not sufficiently alleged the fact of damages, and instead has made only a broad conclusory statement that it "suffered monetary damages in an amount to be proven at trial"; (ii) any damages and costs incurred by Defendant to investigate the cybersecurity incident were a result of Defendant's own acts and omissions; (iii) Plaintiff is the only party that was damaged, because it never received payment; and (iv) Plaintiff's alleged breaches were not material and were not the proximate cause of whatever damages Defendant claims to have suffered. (*Id.*). As the Court explains below, it credits none of Plaintiff's arguments and concludes that Defendant has plausibly alleged the damages element of its breach of contract counterclaim.

*First*, Plaintiff argues that Defendant sets forth only conclusory statements to allege damages connected to Plaintiff's purported breach of the Agreement, devoid of supporting facts. (Pl. Br. 11). Plaintiff is correct that a boilerplate allegation that a party suffered damages is generally inadequate to allege a breach of contract claim. *See Miller* v. *HSBC Bank U.S.A., N.A.*, No. 13 Civ. 7500 (RWS), 2015 WL 585589, at *4 (S.D.N.Y. Feb. 11, 2015) (concluding that the plaintiff's "unsupported claim that she 'suffered damages' ... is not enough to properly plead the damages element of a breach of contract claim"); *see also Gordon* v. *Dino De Laurentiis Corp.*, 529 N.Y.S.2d 777, 779 (1st Dep't 1988) ("In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint, and the pleadings must set forth facts showing the damage upon which the action is based."). Here, the Court finds that construing the Answer and

9

Counterclaims in the light most favorable to the non-moving party, Defendant did in fact make a concrete allegation that it suffered damages resulting from Plaintiff's breach, though it did so in its counterclaim for declaratory judgment. (*See* Countercl. ¶ 54 (referring to the "attorneys' fees incurred in defending this lawsuit")). Accordingly, Defendant's allegations suffice to satisfy the pleading standard for the damages element of a breach of contract claim. *See, e.g., Empire Merchants, LLC* v. *Merinoff*, No. 16 Civ. 9590 (JMF), 2017 WL 5176384, at *6 (S.D.N.Y. Nov. 8, 2017) (holding that plaintiff's "boilerplate allegations" that it suffered damages as a result of defendant's breach of a forum selection clause were sufficient, because the only "damages" that plaintiff could have suffered as a result of the breach were the attorneys' fees and costs it incurred as a result); *Comfort Inn Oceanside* v. *Hertz Corp.*, No. 11 Civ. 1534 (JG) (JMA), 2011 WL 5238658, at *8 (E.D.N.Y. Nov. 1, 2011) (finding that plaintiff had plausibly alleged damages where plaintiff provided "at least some indication" of how defendant's alleged breach resulted in damages).

*Second*, Plaintiff argues that any damages and costs incurred by Defendant to investigate the incident were a result of Defendant's own acts and omissions. (Pl. Br. 11). On this point, Plaintiff cites to several email communications and other documents in an attempt to demonstrate that Defendant's own negligence caused its payment to a fraudulent bank account. (*See* Pl. Br. 3-4). However, these communications are found nowhere in the pleadings; indeed, Defendant claims never to have seen certain of the documents to which Plaintiff is referring. (Def. Opp. 4). In its briefing, Plaintiff

10

launches into a characterization of these extraneous materials, but neglects to provide any basis on which the Court could consider them in resolving this motion. Plaintiff does not explain, for example, how any of these documents might be "integral" to the Counterclaims; even if it had so argued, the Court is skeptical that such an argument would prevail. *See Goel*, 820 F.3d at 559 (observing that "[i]n most instances" where courts deem a document "integral to the complaint," "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls" (quoting *Glob. Network Commc'ns, Inc.*, 458 F.3d at 157)). Moreover, "[b]efore materials outside the record may become the basis for a dismissal, … it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document … [and] that there exist no material disputed issues of fact regarding the relevance of the document." *Salameno* v. *Rawlings*, No. 19 Civ. 4442 (PGG) (BCM), 2021 WL 1085521, at *14 (S.D.N.Y. Mar. 22, 2021) (quoting *Faulkner* v. *Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). The record does not support either finding, as Defendant vehemently contests much of what Plaintiff asserts as "fact" in its briefing — for example, that the cybercriminal obtained access to the parties' email chain through Defendant's system. (Def. Opp. 4-5). Whether the evidence will support Plaintiff's allegations is ultimately a question of fact to be resolved after discovery. The Court declines to consider the documents raised by Plaintiff on the instant motion to dismiss.

*Third,* the Court dispenses with Plaintiff's argument that it was the only party that was damaged because it never received payment. As discussed above, Defendant has plausibly alleged that it incurred damages in the form of the attorneys' fees it must pay incident to defending this lawsuit.

*Fourth,* and finally, Plaintiff argues that its alleged breaches of the Agreement were not material and not the proximate cause of any damages Defendant claims to have suffered. However, the materiality *vel non* of a breach of contract goes only to the question of the type of remedy that may be allowed, not to the issue of liability. *See Orlander* v. *Staples, Inc.*, 802 F.3d 289, 298 (2d Cir. 2015) (citing *Jim Beam Brands Co.* v. *Tequila Cuervo La Rojena S.A. De C.V.*, No. 600122/08, Slip Op. at 5-6 (N.Y. Sup. Ct. Jan. 27, 2011) ("The materiality or non-materiality of a breach of contract only goes to the question of the type of remedy that may be allowed, not to the issue of liability. In order to be entitled to nonmonetary relief for breach of a contract, the non-breaching party must demonstrate that the breach was material."); 23 WILLISTON ON CONTRACTS § 63:3 (4th ed. 2015) ("[A] nonperforming party is liable for any breach of contract, but the other party is discharged from further performance, and is entitled to substantial damages only when there is a material breach.")). Even still, the Court does not deem the issue of materiality appropriate for resolution on this motion, as "the question of the materiality of a breach is usually a question of fact and should be decided as a matter of law only where the inferences are certain." *Orlander*, 802 F.3d at 298 (internal quotations omitted). Here, it is far from certain that Plaintiff's alleged failures

12

to procure commercial crime insurance and maintain information security measures were immaterial.

The Court also determines that Defendant has plausibly alleged that its alleged damages resulted from Plaintiff's alleged breaches of the contract. According to Defendant's Counterclaims, Plaintiff's breaches of the Agreement gave rise to this lawsuit, thus causing Defendant to incur the expense of defending itself. (Countercl. ¶¶ 46-49, 52-53). As such, the Court rejects Plaintiff's argument that its alleged breaches were not the proximate cause of any damages Defendant claims to have suffered.

Accordingly, the Court finds that Defendant has plausibly alleged damages in its counterclaim for breach of contract.

### 2. The Counterclaim Plausibly Alleges Performance

Alternatively, Plaintiff argues that Defendant's counterclaim for breach of contract must be dismissed because it fails to allege adequate performance of the Agreement. (Pl. Br. 12). More specifically, Plaintiff argues that Defendant did not fully perform its obligations under the Agreement because Defendant did not make a payment to Plaintiff. (*Id.*). Indeed, Defendant admits that its "payment" was "diverted" and "redirected" to a "fraudulent account" that did not belong to Plaintiff. (*Id.*). In Plaintiff's estimation, because it never received Defendant's payment, Defendant cannot claim full performance of its payment obligation under New York law. (Pl. Reply 2). The Court disagrees.

Defendant's counterclaim for breach of contract expressly alleges that Defendant "at all times fully performed its obligations under the Agreement,"

13

including that Defendant "has paid for all goods supplied by [Plaintiff], including full payment for the ... Invoices." (Countercl. ¶¶ 40, 45). To the extent Plaintiff believes that the Court should disregard Defendant's clear allegations of performance, Plaintiff has pointed to no law supporting the propriety of rejecting Defendant's well-pleaded allegations on this motion. Accordingly, the Court finds that Defendant has plausibly alleged its performance of the Agreement.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Defendant's counterclaim for breach of contract under Federal Rule of Civil Procedure 12(b)(6) is DENIED. The parties are directed to submit a joint letter and Proposed Case Management Plan and Scheduling Order on or before **February 28, 2022**.

The Clerk of Court is directed to terminate the pending motion at docket number 34.

SO ORDERED.

Dated:   February 7, 2022
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge